UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

RALPH M. MOHR,

       Plaintiff,

   v.                                                                          23-CV-39-LJV
                                                                                DECISION & ORDER
ERIE COUNTY LEGISLATURE, *et al.*,

       Defendants.
_____

On February 22, 2023, the *pro se* plaintiff, Ralph Mohr, asked this Court to redraw the Erie County legislative districts so that candidates could begin qualifying for party primaries using preexisting district boundaries. Docket Item 4. That request came more than a year after Erie County adopted the legislative map that is the subject of Mohr's lawsuit, and more than a month after Mohr commenced that lawsuit, but only six days before candidates could begin to circulate designating petitions for party primaries. For that reason, this Court addressed Mohr's request on an expedited schedule. *See* Docket Item 6.

Because Mohr has not established standing to obtain a preliminary injunction, his request is denied. Mohr may amend his complaint or otherwise establish that he has standing to pursue his claims in this case within 30 days of the date of this order.

## BACKGROUND[1]

Mohr is one of two Election Commissioners on the Erie County Board of Elections.  Docket Item 1 at ¶ 4.  He resides in Lancaster, New York, and "expects to vote in the upcoming primary and general elections to be held this year."  *Id.*

In 2011, Mohr filed suit in this Court after Erie County "fail[ed] to adopt a plan of apportionment for its legislature."  *Id.* at ¶ 11.  That case ended when United States District Judge William M. Skretny divided Erie County into eleven legislative districts and directed the Erie County Board of Elections to establish metes and bounds for those eleven districts.  *See Mohr v. Erie Cnty. Legislature*, 2011 WL 3421326, at *7 (W.D.N.Y. Aug. 4, 2011).  Those districts remained in effect for the rest of the decade.  *See* Docket Item 1 at ¶ 12.

After the 2020 United States Census, the Erie County Legislature reviewed and revised the eleven legislative districts.  *Id.* at ¶¶ 12-13.  On December 16, 2021, the Erie County Legislature "unanimously adopted a proposed local law containing a metes[-]and[-]bounds description of eleven purportedly new legislative districts."  *Id.* at ¶ 14.

Before Erie County Executive Mark Poloncarz approved the proposed law, Mohr "discovered numerous errors in the metes[-]and[-]bounds description" of the eleven

---

[1] Unless otherwise noted, the following facts are taken from the complaint, Docket Item 1.  "When a preliminary injunction is sought, a plaintiff's burden to demonstrate standing 'will normally be no less than that required on a motion for summary judgment.'"  *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 907 n.8 (1990)).  "Accordingly, to establish standing for a preliminary injunction, a plaintiff cannot rest on [] mere allegations, as would be appropriate at the pleading stage[,] but must set forth by affidavit or other evidence specific facts, which for purposes of the . . . motion will be taken to be true."  *Id.* (alterations, citation, and internal quotation marks omitted).

districts.  *Id.* at ¶ 15.  In fact, Mohr discovered that the proposed law "referenced districts extending to points outside [] Erie County, purported to contain points of intersection along lines which did not intersect, included voters of the county in multiple districts[,] and excluded other voters in the county [altogether]."  *Id.* at ¶ 16.  Mohr twice raised these issues with Erie County officials before the proposed law was approved: first in a conversation with then-First Assistant Erie County Attorney Jeremy Toth and next at a public hearing on the proposed law.  *Id.* at ¶¶ 15-16.  Despite that, on January 11, 2022, County Executive Poloncarz approved the proposed law as Local Law Number 2.  *Id.* at ¶ 17.

More than a year passed before Mohr filed this case naming the Erie County Legislature, County Executive Poloncarz, Election Commissioner Jeremy J. Zellner, and Erie County as defendants.  Docket Item 1.  And more than a month after filing the complaint, Mohr moved for a preliminary injunction asking this Court to order that the "2023 primary and general elections for the public office of county legislator [] be administered in accordance with the current constitutional legislative district boundaries"—that is, the legislative districts drawn more than a decade earlier.  Docket Item 4-3 at 3.  Mohr asked for expedited consideration of that motion because, at the time of its filing on February 22, 2023, "the first day to circulate designating petitions for the eleven county legislative seats [was] merely six days away."  Docket Item 5-1 at ¶ 8.

That same day, this Court granted Mohr's motion for an expedited hearing.  Docket Item 6.  The defendants responded to the motion on the morning of February 24, 2023, Docket Items 16 and 17, and Mohr replied a few hours later, Docket Item 18.  This Court then heard oral argument that afternoon.  Docket Item 19.

The defendants argue that Mohr lacks standing to pursue his claims and that, in any event, the anomalies in the metes-and-bounds description of the eleven legislative districts were corrected by the Erie County Board of Elections in February 2023—before Mohr filed his motion for a preliminary injunction.  See Docket Item 17 at 12 (citing Docket Item 17-3 at ¶¶ 16-18, 24-25); see also id. at 18-22.  Mohr, on the other hand, says that the Board of Elections lacks the power to correct the deficiencies alleged in the complaint and that, regardless, the "proposed metes and bounds [do] not serve to correct the deficiencies contained in Erie County Local Law [Number] 2."  Docket Item 18 at 4-6 (capitalization removed).

## **LEGAL PRINCIPLES**

"A preliminary injunction is an extraordinary remedy never awarded as of right." Winter v. NRDC, 555 U.S. 7, 24 (2008).  "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."[2]  Id. at 20.  "A preliminary

---

[2] Although the Second Circuit also recognizes a "less rigorous" preliminary injunction standard of "sufficiently serious questions going to the merits to make them a fair ground for litigation plus a balance of hardships tipping decidedly in [the plaintiff's] favor," that standard "cannot be used"—as Mohr seeks to do here—to "preliminarily enjoin governmental action."  Trump v. Deutsche Bank AG, 943 F.3d 627, 637 (2d Cir. 2019), vacated on other grounds, 140 S. Ct. 2019 (2020); see also Pharaohs GC, Inc. v. U.S. Small Bus. Admin., 990 F.3d 217, 231-32 (2d Cir. 2021) ("A district court may grant a mandatory injunction against the government only if it determines that, in addition to demonstrating irreparable harm, the moving party has shown a clear or substantial likelihood of success on the merits." (citation and internal quotation marks omitted)). Regardless, Mohr's motion is denied for the reasons stated below—namely, that Mohr lacks standing to obtain the relief he seeks.

injunction is an equitable remedy and an act of discretion by the court." *ACLU v. Clapper*, 804 F.3d 617, 622 (2d Cir. 2015).

## DISCUSSION

"[A] plaintiff seeking relief in federal court must first demonstrate that he has standing to do so, including that he has a personal stake in the outcome distinct from a generally available grievance about government." *Gill v. Whitford*, 138 S. Ct. 1916, 1923 (2018) (citations and internal quotation marks omitted). "To satisfy the constitutional requirement of standing, [a] plaintiff[] in federal court bear[s] the burden of establishing that (1) [he] ha[s] suffered an 'injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical'; (2) the injury is 'fairly traceable to the challenged action of the defendant'; and (3) it is 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Soule by Stanescu v. Conn. Ass'n of Schs., Inc.*, 57 F.4th 43, 50 (2d Cir. 2022) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). "Foremost among these requirements is injury in fact—a plaintiff's pleading and proof that he has suffered the 'invasion of a legally protected interest' that is 'concrete and particularized,' *i.e.*, which 'affects the plaintiff in a personal and individual way.'" *Gill*, 138 S. Ct. at 1929 (alterations omitted) (quoting *Lujan*, 504 U.S. at 560 & n.1).

Mohr says that the legislative districts enacted in Local Law Number 2 violate his rights under the Equal Protection Clause by "plac[ing] certain county residents in multiple legislative districts, exclud[ing] other residents from any legislative district, extend[ing] some legislative districts to include areas and populations outside [] Erie

5

County[,] and fail[ing] to create eleven contiguous legislative districts." Docket Item 1 at ¶¶ 18-19. But Mohr has not established that any of those alleged deficiencies injure him in a concrete and particularized way.

First, a "person's right to vote is 'individual and personal in nature.'" *Gill*, 138 S. Ct. at 1929 (quoting *Reynolds v. Sims*, 377 U.S. 533, 561 (1964)). So "'voters who allege facts showing disadvantage to *themselves as individuals* have standing to sue' to remedy that disadvantage." *Id.* (emphasis added) (quoting *Baker v. Carr*, 369 U.S. 186, 206 (1962)). Mohr does not say that he has been excluded from any legislative district and cannot vote; instead, he generally asserts that some unidentified individuals have been left out. *See* Docket Item 1 at ¶ 19. But even if *those individuals* might be injured by what Mohr alleges, Mohr cannot rely on the "individual and personal" rights of others to show that he has standing here. *See Gill*, 138 S. Ct. at 1929.

Mohr's other alleged equal protection violations are no more concrete and particularized. For example, Mohr claims that the Local Law Number 2 produces district lines that are not contiguous and that extend beyond Erie County. *See* Docket Item 1 at ¶ 19. But Mohr does not say how that affects him in any unique way; instead, he simply asserts an abstract interest in policing the boundaries of the Erie County legislative districts. That is the sort of "generalized grievance against governmental conduct" that is not an injury sufficient for standing. *See Gill*, 138 S. Ct. at 1930.

Finally, Mohr says that Local Law Number 2 violates his equal protection rights by "plac[ing] county residents in multiple legislative districts." Docket Item 1 at ¶ 19. Presumably, by Mohr's account, residents placed in multiple districts will not think twice about voting twice and thereby will dilute Mohr's vote. Setting aside whether that injury

6

is too speculative to confer standing, it also is not particular to Mohr:  Even if Mohr lives in one of the districts with a voter who can vote twice, Mohr would be affected in the same way as every other district resident who does not vote twice.  Again, that sort of undifferentiated harm to the general public is not a sufficiently particularized injury.  *See Martel v. Condos*, 487 F. Supp. 3d 247, 253 (D. Vt. 2020) ("A vote cast by fraud or mailed in by the wrong person through mistake has a mathematical impact on the final tally and thus on the proportional effect of every vote, but no single voter is specifically disadvantaged.").  Mohr therefore has not shown that his alleged equal protection violation is concrete and particularized.

Mohr also alleges that he has standing by virtue of his position as Election Commissioner because his right to due process in that position is violated by Local Law Number 2.[3]  But that claim is too "conjectural [and] hypothetical" to establish standing for a preliminary injunction.  *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016).

Mohr says that his rights under the Due Process Clause are violated by Local Law Number 2 because if he implemented that law, he would face criminal prosecution.  Docket Item 1 at ¶¶ 20-25.  More specifically, Mohr says that he could be prosecuted under sections 17-106 and 17-128 of the New York State Election Law for "[willfully] neglect[ing] or refus[ing] . . . to perform [his] duty" under state law.  *Id.* at ¶ 21 (citing N.Y. Elec. Law §§ 17-106, 17-128).  And, Mohr says, by "assign[ing] voters to districts

---

[3] To the extent that Mohr seeks to assert a claim in his capacity as Election Commissioner, this Court agrees with the defendants that he has not shown that he has the capacity to do so under New York State law.  *See County of Nassau v. State of New York*, 100 A.D.3d 1052, 1054, 953 N.Y.S.2d 339, 342 (3d Dep't 2012) (finding that a county election commissioner "lacks the capacity to unilaterally maintain" claims "affecting the [Board of Elections] as a whole" without "approval of a majority of the commissioners").

where they do not reside," he would be aiding and abetting voter fraud.  *See id.* at ¶ 22 (citing N.Y. Elec. Law § 17-132).

Mohr offers no factual basis for this fear of prosecution; instead, he simply offers a cursory citation to New York State law.  *See id.* at ¶¶ 20-25.  And at oral argument, Mohr conceded that he was unaware of any prosecution that had ever been pursued in similar circumstances.  That is the sort of bare speculation that cannot suffice to establish standing for a preliminary injunction.  *See Cacchillo*, 638 F.3d at 404; *see also Bellocchio v. Garland*, 2022 WL 2702445, at *3 (S.D.N.Y. July 12, 2022) ("[A] credible threat of prosecution cannot rest on fears that are 'imaginary or speculative.'  Nor is a credible threat of prosecution evident where [the] plaintiff[] 'do[es] not claim that [he] ha[s] ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible.'" (citations omitted) (quoting *Knife Rts., Inc. v. Vance*, 802 F.3d 377, 384 (2d Cir. 2015)).

For those reasons, Mohr has not shown that he has standing on his federal claims, and his motion for a preliminary injunction therefore is denied.  *See Do No Harm v. Pfizer, Inc.*, 2022 WL 17740157, at *20 (S.D.N.Y. Dec. 16, 2022) ("Because the Court finds that [the plaintiff] lacks . . . standing to bring the federal claims, the Court declines to address the factors to be considered in deciding whether to award a preliminary injunction and instead will deny the [m]otion." (citation and internal quotation marks omitted)).[4]

---

[4] Mohr brings two additional claims in his complaint; one simply proposes a remedy, *see* Docket Item 1 at ¶¶ 26-32, while the second arises under state law, *see id.* at ¶¶ 33-38, and raises "novel [and] complex issue[s]" of New York State law, *see* 28 U.S.C. § 1367(c)(1).  Because Mohr's federal claims are subject to dismissal for lack of standing, and in light of the apparently novel questions of state law raised in Mohr's

Because Mohr does not have standing, his entire complaint is subject to dismissal.  See Cave, 514 F.3d at 250 (remanding for the district court "to dismiss without prejudice [the] federal causes of action for lack of subject matter jurisdiction" rather than denying the motion for a preliminary injunction on the merits); Do No Harm, 2022 WL 17740157, at *6 ("If a plaintiff fails to establish standing[ for a preliminary injunction], [the court] should [] deny the motion and dismiss the case for lack of subject matter jurisdiction.").  In light of his pro se status, however, Mohr may amend his complaint within 30 days of the date of this order to establish standing or may otherwise demonstrate that he has standing to pursue his claims here.  See Shibeshi v. City Univ. of N.Y., 531 F. App'x 135, 136 (2d Cir. 2013) (summary order) ("[D]istrict courts should generally not dismiss a pro se complaint without granting the plaintiff leave to amend . . . .").

## **CONCLUSION**

Just a few days before candidates could begin circulating designating petitions for party primaries, Mohr asked this Court to draw new lines for the districts in which those candidates might run.  He knew for many months—or at least several weeks—that this issue was on the horizon, but he chose not to seek the Court's intervention until the petition period was about to begin.  And when he did, he did not provide any reason

---

complaint, this Court declines to exercise supplemental jurisdiction over his state law claim at this stage.  See Do No Harm, 2022 WL 17740157, at *21 ("Where a plaintiff lacks standing to bring federal claims [on a motion for a preliminary injunction], it is 'clearly inappropriate for the district court to retain jurisdiction over the state law claims.'" (alterations omitted) (quoting Cave v. E. Meadow Union Free Sch. Dist., 514 F.3d 240, 250 (2d Cir. 2008))).  Mohr may renew that claim in any amended complaint.

for this Court to find that the law about which he complains injures him in any way sufficient to give him standing.

      Mohr's motion for a preliminary injunction, Docket Item 4, therefore is DENIED. Within 30 days of the date of this order, Mohr may amend his complaint to establish standing or may otherwise demonstrate that he has standing to pursue his claims in this case. If Mohr does not amend his complaint or otherwise establish standing within 30 days of the date of this order, then his claims will be dismissed without prejudice and the Clerk of the Court shall close the case.

      SO ORDERED.

      Dated:  February 27, 2023
               Buffalo, New York

                                            /s/ Lawrence J. Vilardo
                                          LAWRENCE J. VILARDO
                                          UNITED STATES DISTRICT JUDGE