UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————

RALPH M. MOHR,

        Plaintiff,

    v.

ERIE COUNTY LEGISLATURE, *et al.*,

        Defendants.

———————————————————

23-CV-39-LJV
DECISION & ORDER

On January 17, 2023, the *pro se* plaintiff, Ralph Mohr, commenced this action against Erie County, the Erie County Legislature, Erie County Executive Mark C. Poloncarz, and Erie County Election Commissioner Jeremy J. Zellner.  Docket Item 1. Mohr, the other Erie County Election Commissioner, says that Erie County's most recent legislative redistricting, which was conducted after the 2020 United States Census, violates his rights under the United States Constitution's Equal Protection and Due Process Clauses.  *See id.*; Docket Item 21.

Just a few days before candidates could begin to circulate designating petitions for 2023 party primaries, Mohr moved for a preliminary injunction and asked this Court to order that the 2023 election cycle proceed under the legislative map used in prior election cycles.  Docket Item 4.  On February 27, 2023, this Court found that Mohr lacked standing to bring his claims and denied his motion for a preliminary injunction. Docket Item 20.  But this Court gave Mohr leave to amend his complaint to establish that he has standing to challenge the legislative redistricting here.  *Id.*

On March 17, 2023, Mohr filed an amended complaint.  Docket Item 21.  The defendants then answered the complaint and moved for summary judgment, arguing,

among other things, that Mohr still does not have standing.  Docket Items 23-25, 27.

The defendants also argue that even if Mohr does have standing to pursue his claims,

those claims fail on a number of other threshold grounds and are substantively meritless

as well.  *See id.*

    For the reasons stated below, this Court concludes that Mohr still lacks standing

and therefore grants the defendants' motions for summary judgment.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

**I.    THE ERIE COUNTY LEGISLATURE ENACTS LOCAL LAW NUMBER 2.**

    On October 29, 2021, the Erie County Reapportionment Committee—a fifteen-

member advisory committee tasked with "recommend[ing] to the [Erie] County

Legislature [] whether and how the [Erie] County Legislature should be reapportioned

consistent with federal and state law"—"voted to adopt and recommend new maps for

each of the eleven Erie County legislative districts."  Docket Item 25-1 at ¶¶ 1-4; Docket

Item 32-6 at ¶¶ 1-4.  Those maps were "based on certified" data from the most recent

United States Census.  Docket Item 25-1 at ¶ 6; Docket Item 32-6 at ¶ 6.  The

recommended maps "were then sent to the [Erie County] Legislature for further action."

Docket Item 25-1 at ¶ 5; Docket Item 32-6 at ¶ 5.

    "After receiving the [maps], the Erie County Legislature began its review and

adoption process."  Docket Item 25-1 at ¶ 8; Docket Item 32-6 at ¶ 8.  During that

---

[1] Unless otherwise noted, the following facts are taken from the parties' statements of material fact, Docket Items 25-1 and 32-6.  On a motion for summary judgment, the court "construe[s] the evidence in the light most favorable to the non-moving party and draw[s] all reasonable inferences in its favor."  *ING Bank N.V. v. M/V TEMARA, IMO No. 9333929*, 892 F.3d 511, 518 (2d Cir. 2018).

process, Board of Elections staff and legal counsel "devised and read aloud metes-and-bounds descriptions of the legislative district lines."  Docket Item 25-1 at ¶ 10; Docket Item 32-6 at ¶ 10.  But those "transcribed metes and bounds contained several inadvertent errors," which escaped the notice of the Board of Elections and Erie County Legislature staff.  Docket Item 25-1 at ¶ 10; Docket Item 32-6 at ¶ 10.

The transcribed metes-and-bounds descriptions "were then incorporated into a draft local law . . . for consideration by the Erie County Legislature."  Docket Item 25-1 at ¶ 11; Docket Item 32-6 at ¶ 11.  "On December 16, 2021, the Erie County Legislature voted unanimously to adopt" the proposed local law.  Docket Item 25-1 at ¶ 13; Docket Item 32-6 at ¶ 13.  All the while, according to the defendants, the Erie County Legislature remained unaware of the errors in the metes-and-bounds description of the eleven legislative districts.  Docket Item 25-1 at ¶ 14.

Before County Executive Poloncarz approved the proposed law, Mohr "advised county officials of errors in the metes-and-bounds descriptions" of the proposed law. Docket Item 25-1 at ¶ 20; Docket Item 32-6 at ¶ 20.  More specifically, Mohr "relayed" to then-First Assistant Erie County Attorney Jeremy Toth that Mohr "had discovered numerous errors in the metes[-]and[-]bounds description as contained in the [proposed] local law."  Docket Item 21 at ¶ 14.  And Mohr testified at a public hearing that the legislative districts drawn by the proposed local law "extend[ed] to points outside [] Erie County, purported to contain points of intersection along lines which did not intersect, included voters of the county in multiple districts[,] and excluded other voters in the county [altogether]."  *Id.* at ¶ 15.  Despite Mohr's warnings, on January 11, 2022,

County Executive Poloncarz signed the proposed law, which then "was designated Local Law No. 2 of 2022."  Docket Item 25-1 at ¶ 15; Docket Item 32-6 at ¶ 15.

## II.   THIS LITIGATION ENSUES.

More than a year after County Executive Poloncarz signed Local Law Number 2, Mohr filed this case.  Docket Item 1.  Mohr, the Republican Commissioner of the Erie County Board of Elections, named Zellner, the Democratic Commissioner of the Erie County Board of Elections; Erie County Executive Poloncarz; the Erie County Legislature; and Erie County as defendants.  *Id.*; *see also* Docket Item 25-1 at ¶¶ 17-18; Docket Item 32-6 at ¶¶ 17-18.  He claimed that the metes-and-bounds errors outlined above violated his right to equal protection by "plac[ing] certain county residents in multiple legislative districts, exclud[ing] other residents from any legislative district, extend[ing] some legislative districts to include areas and populations outside [] Erie County[,] and fail[ing] to create eleven contiguous legislative districts."  Docket Item 1 at ¶¶ 18-19.  And he alleged that if he complied with Local Law Number 2 in his role as an Erie County Election Commissioner, he faced prosecution under New York State law, thus violating his right to due process.  *Id.* at ¶¶ 20-25.

More than a month then passed before Mohr moved for a preliminary injunction. Docket Item 4.  In that motion, he asked this Court to order that the "2023 primary and general elections for the public office of county legislator [] be administered in accordance with the current constitutional legislative district boundaries."  *See* Docket Item 4-3 at 3.  In other words, Mohr asked that the 2023 elections be conducted under the district boundaries drawn more than a decade earlier as a result of United States District Judge William M. Skretny's decision in *Mohr v. Erie County Legislature*, 2011

WL 3421326 (W.D.N.Y. Aug. 4, 2011).[2]  Because Mohr filed that motion on February

22, 2023, less than a week before candidate qualifying was scheduled to begin, he

asked for expedited consideration.  *See* Docket Item 5; Docket Item 5-1 at ¶ 8

(requesting expedited consideration because "the first day to circulate designating

petitions for the eleven county legislative seats [was] merely six days away").

This Court granted Mohr's motion to expedite, Docket Item 6, and on February

24, 2023, this Court heard oral argument on Mohr's motion for a preliminary injunction,

Docket Item 19.  Three days later, this Court denied that motion.  Docket Item 20.  More

specifically, this Court found that Mohr lacked standing to pursue his claims because he

had not alleged that Local Law Number 2 injured him in any concrete, non-speculative

way.  *See id.*  But this Court gave Mohr thirty days to amend his complaint to establish

that he has standing here.  *See id.*

On March 17, 2023, Mohr filed an amended complaint.  Docket Item 21.  He now

alleges that Local Law Number 2 unconstitutionally dilutes his vote because the

boundaries for the Eighth Legislative District—the district in which he resides—stretch to

points "on the continent of Antarctica or across the Canadian border," as well as

"beyond the boundary of a neighboring legislative district."  *See id.* at ¶¶ 17-21.  And

Mohr again says that his due process rights are violated by Local Law Number 2, and

the Board of Elections' implementation of that law, because if he administers the 2023

---

[2] In that case, Mohr sued Erie County, the Erie County Legislature, and the Erie County Executive after Erie County "fail[ed] to adopt a county legislative redistricting and reapportionment plan for the 2011 election."  *Mohr*, 2011 WL 3421326, at *1.  That case ended when Judge Skretny divided Erie County into eleven legislative districts and directed the Erie County Board of Elections to establish metes and bounds for those districts.  *Id.* at *7.

election in his role as an Erie County Election Commissioner, he may be criminally prosecuted for "failing to comply with a duty imposed by statute, with which it is legally impossible to comply."  *Id.* at ¶ 33.

On March 31, 2023, the defendants answered the amended complaint and moved for summary judgment.  Docket Items 23-25, 27.  They also moved to expedite to ensure that this Court could decide their motions before May 4, 2023, the date "to certify ballots for the primary election."  Docket Item 26-1 at ¶ 11.

Recognizing the cloud that this case might cast over the now-ongoing 2023 election cycle, this Court granted the defendants' motion to expedite and directed Mohr to respond to the motions for summary judgment by April 10, 2023.  Docket Item 31. Mohr responded that day, Docket Item 32, and on April 14, 2023, the defendants replied, Docket Items 35, 36.  Although this Court scheduled oral argument for April 17, 2023, Docket Item 31, Mohr subsequently asked this Court to cancel that hearing and decide the motion on the papers alone, Docket Item 33.

## III.  THE BOARD OF ELECTIONS ADDRESSES THE METES-AND-BOUNDS ERRORS.

While this case has been pending, the Board of Elections has addressed the metes-and-bounds errors that Mohr alleges—although the parties dispute the lawfulness (and therefore the effect) of those actions.

By the defendants' telling, the Board of Elections realized the need to fix the errors in the metes-and-bounds descriptions and "agreed to write corrected metes and bounds over several days in February of 2023."  Docket Item 25-1 at ¶¶ 27-28.  The "objective" of that process "was to adhere as closely as possible to the will of the [Erie County] Legislature" when it enacted Local Law Number 2 while fixing the errors in the

legislative district boundaries.  *Id.* at ¶ 30.  According to the defendants, Mohr

participated in that process as an Erie County Election Commissioner.  *See id.* at ¶¶ 36,

41.  And the defendants say that "[o]nce the [c]orrected [m]etes and [b]ounds were

finalized in February 2023, the staff of the Board of Elections" then "assigned all Erie

County registered voters . . . to election precincts and Erie County legislative districts

consistent with the [c]orrected [m]etes and [b]ounds."  *Id.* at ¶ 38.  That is, the

defendants say that the Board of Elections has corrected the alleged errors that are the

subject of this case and has successfully assigned all voters to their legislative districts.

Mohr sees things differently.  He claims that he only "offered to assist in defining

the metes and bounds" of a new local law that would then be presented to the Erie

County Legislature for enactment.  Docket Item 32-6 at ¶ 23.  Mohr "denies that he ever

authorized" the Board of Elections to assign voters to districts based on the corrected

metes and bounds; in fact, he says that he instead "repeatedly instructed" staff "to

prevent [that] from occurring" without his approval.  *Id.* at ¶ 41.  And Mohr says that the

Board of Elections could not make those corrections because it lacks the power to do so

under state law.  *Id.* at ¶ 23.

Because of this dispute over the Board of Elections' actions, and because of this

litigation, Mohr has objected to the Board of Elections' administration of the ongoing

2023 election cycle.  At the most recent Board of Elections meeting, Mohr "refused to

approve this year's proposed 'Five-Percent Book,' which the Board of Elections issues

annually to inform political candidates and the public about how many voters[] . . . are

registered in each election precinct, municipality, and legislative district in Erie County,

and how many petition signatures are needed for a candidate to qualify for the primary

ballot in any party, for any elective office."  Docket Item 25-1 at ¶ 52; Docket Item 32-6 at ¶ 47.  Mohr says that he declined to do so because approving the Five-Percent Book would require him to "knowingly certify numbers and district boundaries which were false."  Docket Item 32-6 at ¶ 47.  That is, Mohr says that because the Board of Elections cannot correct the metes-and-bounds description under state law, the Five-Percent Book includes "figures [that] are not what was legally enacted and are fraudulent."  Docket Item 32 at ¶¶ 19-20.

## **LEGAL PRINCIPLES**

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant—that is, the party seeking summary judgment—has the burden of demonstrating that there is no disputed material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The movant may satisfy this burden by relying on evidence in the record, "including depositions, documents, . . . [and] affidavits," Fed. R. Civ. P. 56(c)(1)(A), or by "point[ing] to an absence of evidence to support an essential element of the nonmoving party's claim," *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23); *see* Fed. R. Civ. P. 56(c)(1)(B).  Once the movant has satisfied its initial burden, "the nonmoving party must come forward with specific facts" showing that there is a genuine dispute of material fact.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and internal quotation marks omitted).  If the nonmovant fails to do so, the court may grant summary judgment.  *See Celotex*, 477 U.S. at 322-23.

8

A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  There is a genuine dispute of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  "[T]he court must view the evidence in the record in the light most favorable to the non-moving party" and must draw "all reasonable inferences in that party's favor." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001).  But "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996).

## DISCUSSION[3]

"[A] plaintiff seeking relief in federal court must first demonstrate that he has standing to do so, including that he has a personal stake in the outcome distinct from a

---

[3] Mohr devotes much of his amended complaint and his opposition papers to challenging the Board of Elections' purported corrections to the metes-and-bounds description and alleging that those corrections were unlawful.  *See, e.g.*, Docket Item 21 at ¶ 27 (alleging that the defendants, "without following the procedures mandated by state law, placed registered voters of the county into various legislative districts they thought appropriate notwithstanding explicit language contained in Erie County Local Law No. 2"); Docket Item 32-7 at 5 (arguing that "the misapportion of voters caused by the unilateral and ultra vires actions employed by [the] defendants to date is significant").  In other words, Mohr's current theory of the case appears to depend on this Court's making a preliminary finding that the Board of Elections has violated state or local law.  *See, e.g.*, Docket Item 21 at ¶ 35 ("request[ing] that the Court enter a declaratory judgment pursuant to 28 U.S.C. § 2201 declaring [the] defendants' unilateral apportionment of Erie County voters into legislative districts inconsistent with the metes[-]and[-]bounds description of Erie County Local Law No. 2"); Docket Item 32-7 at 7 (alleging that the metes-and-bounds corrections amounted to "a restructuring of [Erie County's] local legislative body more than once in a decade, [which is] prohibited by [section] 10(ii)(13)(f)" of the New York Municipal Home Rule Law).

In those circumstances—when a plaintiff's federal constitutional claim hinges on a threshold dispute about whether a local governmental body violated state or local

generally available grievance about government." *Gill v. Whitford*, 138 S. Ct. 1916, 1923 (2018) (citations and internal quotation marks omitted). "To satisfy the constitutional requirement of standing, [a] plaintiff[] in federal court bear[s] the burden of establishing that (1) [he] ha[s] suffered an 'injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical'; (2) the injury is 'fairly traceable to the challenged action of the defendant'; and (3) it is 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Soule by Stanescu v. Conn. Ass'n of Schs., Inc.*, 57 F.4th 43, 50 (2d Cir. 2022) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). "Foremost among these requirements is injury in fact—a plaintiff's pleading and proof that he has suffered the 'invasion of a legally protected interest' that is 'concrete and particularized,' *i.e.*, which 'affects the plaintiff in a personal and individual way.'" *Gill*, 138 S. Ct. at 1929 (alterations omitted) (quoting *Lujan*, 504 U.S. at 560 & n.1).

## I.    DUE PROCESS CLAIM

This Court previously found that Mohr lacked standing to pursue his due process claim because he only speculated that he would be prosecuted for complying with Local

---

law—*Pullman* abstention may well be appropriate. *See Vt. Right to Life Comm., Inc. v. Sorrell*, 221 F.3d 376, 385 (2d Cir. 2000) ("Abstention under the *Pullman* doctrine may be appropriate when three conditions are met: (1) an unclear state statute is at issue; (2) resolution of the federal constitutional issue depends on the interpretation of the state law; and (3) the law is susceptible to an interpretation by a state court that would avoid or modify the federal constitutional issue." (citation and internal quotation marks omitted)); *see generally R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941). Because Mohr lacks standing to pursue his claims, however, this Court does not abstain under *Pullman* or address the defendants' remaining threshold arguments.

Law Number 2.  Docket Item 20 at 7-8.  In his amended complaint, Mohr again claims that he has standing to challenge Local Law Number 2 and the Board of Elections' implementation of that law because he might be prosecuted under two New York State statutes that bar election officials from "[willfully] neglect[ing] or refus[ing] . . . to perform [their] dut[ies]" under state law.[4]  *See* Docket Item 21 at ¶¶ 22-35.  Because Mohr still has not alleged that he faces a credible threat of prosecution for implementing (or refusing to implement) Local Law Number 2, however, he lacks standing to pursue his due process claim.

A plaintiff can establish standing to challenge a statute based on a "credible threat of prosecution," but that threat "cannot rest on fears that are 'imaginary or speculative.'"  *Knife Rts., Inc. v. Vance*, 802 F.3d 377, 384 (2d Cir. 2015) (quoting

---

[4] Under New York Election Law § 17-706,

> [a]ny election officer who wilfully refuses to accord to any duly accredited watcher or to any voter or candidate any right given him by this chapter, or who wilfully violates any provision of the election law relative to the registration of electors or to the taking, recording, counting, canvassing, tallying or certifying of votes, or who wilfully neglects or refuses to perform any duty imposed on him by law, or is guilty of any fraud in the execution of the duties of his office, or connives in any electoral fraud, or knowingly permits any such fraud to be practiced, is guilty of a felony.

N.Y. Elec. Law § 17-106 (spelled as "wilfully" in original).

Under New York Election Law § 17-128,

> [a] public officer or employee who knowingly and wilfully omits, refuses or neglects to perform any act required of him by this chapter or who knowingly and wilfully refuses to permit the doing of any act authorized by this chapter or who knowingly and wilfully hinders or delays or attempts to hinder or delay the performance of such an act is, if not otherwise provided by law, guilty of a felony.

N.Y. Elec. Law § 17-128 (spelled as "wilfully" in original).

*Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). "A plaintiff

need not demonstrate with certainty that he will be prosecuted under the statute to show

injury, but he must demonstrate a fear that is both actual and well-founded." *Kearns v.*

*Cuomo*, 981 F.3d 200, 207 (2d Cir. 2020). And a plaintiff cannot establish a credible

threat of prosecution when he "do[es] not claim that [he has] ever been threatened with

prosecution, that a prosecution is likely, or even that a prosecution is remotely possible."

*Knife Rts.*, 802 F.3d at 384 (quoting *Babbitt*, 802 F.3d at 384).

As an initial matter, Mohr does not claim that he will be prosecuted under Local

Law Number 2 itself. Nor could he, considering that Local Law Number 2 simply draws

the boundaries of the eleven Erie County legislative districts and does not itself require

or proscribe any conduct. Instead, Mohr claims that he could be prosecuted under

sections 17-106 and 17-128 of the New York Election Law because complying with

Local Law Number 2 necessarily will require him to file false election results.[5] *See*

Docket Item 21 at ¶¶ 22-35. That bank-shot theory of standing—where a plaintiff

challenges a law on the grounds that complying with it could lead to prosecution under

some different law—has been met with some skepticism by other courts. *See, e.g.*,

*Kearns v. Cuomo*, 415 F. Supp. 3d 319, 329 (W.D.N.Y. 2019) ("[T]he Court is not

persuaded that the case law Plaintiff relies upon regarding preenforcement challenges

based on a credible threat of prosecution is applicable here, where the law Plaintiff is

challenging is different than the law under which he allegedly fears criminal

prosecution."); *see also Penkoski v. Bowser*, 548 F. Supp. 3d 12, 30 (D.D.C. 2021)

---

[5] Mohr also cites New York Penal Law § 175.30, which prohibits "[o]ffering a false instrument for filing." Docket Item 21 at ¶ 29. But Mohr likewise offers no further indication of how he credibly fears that he could be prosecuted under that statute.

("[P]re-enforcement challenges are limited to where the threat of enforcement stems from the challenged law itself." (citing *Kearns*, 415 F. Supp. 3d at 329)).

But even assuming that Mohr can establish standing to challenge Local Law Number 2 or the Board of Elections' actions because he might be prosecuted under some other law, he still does not have standing here.  When this Court denied Mohr's motion for a preliminary injunction, it concluded that his alleged fear of prosecution was purely speculative because Mohr only "offer[ed] a cursory citation to New York State law" rather than any factual allegations that would show that prosecution was even "remotely possible."  *See* Docket Item 20 at 8 (citing *Bellocchio v. Garland*, 2022 WL 2702445, at *3 (S.D.N.Y. July 12, 2022)).  In his amended complaint, Mohr offers an example of a "former commissioner of elections at the Dutchess County Board of Elections" who Mohr says was "indicted on one felony and three misdemeanor charges for allegedly certifying votes in . . . election districts that reflected altered votes and offering a false instrument for filing."  Docket Item 21 at ¶ 30.  Mohr also alleges that he fears prosecution because "[t]he Erie County District Attorney['s] Office has [] not shied from investigating potential election law violations or enforcement of its provisions."  *Id.* at ¶ 31.  But neither addition makes Mohr's claim any less speculative.

First, the case on which Mohr relies—a nearly ten-year-old indictment of a Dutchess County Board of Elections Commissioner—is clearly distinguishable. Although Mohr offers little information about that case other than a citation to a single news article, *see* Docket Item 21 at ¶ 30 n.1, the defendants have submitted the indictment from that case, *see* Docket Item 25-4.  That indictment shows that the defendant in that case was charged *after* an election for "willfully violat[ing]" New York

Election Law § 17-106 by "issuing a statement of canvass of the Dutchess County Board of Elections . . . which reflected an altered vote in two election districts." *Id.* at 2. And the indictment further charged the defendant with "committ[ing] an act relating to his office [that] constitut[ed] an unauthorized exercise of his official functions" with the "intent to obtain a benefit" while "knowing that [the] act was unauthorized." *Id.* at 2-3. So that election commissioner was indicted for allegedly certifying altered votes after an election and for taking an official act in exchange for some benefit.

Here, by contrast, Mohr claims that under his own interpretation of state law, he will be prosecuted for conduct that he has taken or will take alongside other Board of Elections employees and for which he will receive no extra-legal benefit. *See, e.g.*, Docket Item 21 at ¶ 32. So other than the fact that an election commissioner in another county was prosecuted for violating New York Election Law § 17-106 and New York Penal Law § 175.30, the relevance of the decade-old case cited in Mohr's amended complaint is unclear.[6]

And Mohr does not further explain why he credibly fears that he will be prosecuted if he—like everyone else involved with the Board of Elections—implements Local Law Number 2. Instead, he generally asserts that the Erie County District Attorney has an interest in investigating "potential election law violations" and "[a]llegations of residency concerning candidates for public office and petition irregularities." *Id.* at ¶ 31. But those vague and inapposite allegations do not make

---

[6] Although the defendants pointed out these distinctions in their motion for summary judgment, Docket Item 27-10 at 15-16, Mohr did not respond to those arguments or further address the Dutchess County indictment in his response papers.

Mohr's claimed threat of prosecution any more "actual" or "well-founded."[7]  *See Kearns*, 981 F.3d at 207.

Indeed, Mohr's due process claim rests on a chain of pure speculation: that the Erie County District Attorney will agree with Mohr's interpretation of state law and conclude that the Board of Elections cannot correct the errors in the metes-and-bounds description; that the District Attorney then will determine that the Board of Elections has been willfully violating its duties based on its erroneous reading of state law; and that the District Attorney then will exercise his discretion to prosecute Mohr for that erroneous interpretation despite Mohr's sentinel call about the alleged irregularity on which his prosecution is based.[8]  Moreover, Mohr claims that he will be prosecuted under two laws that proscribe willful conduct, *see* N.Y. Elec. Law §§ 17-106, 17-128, but he does not even suggest why his acts might be deemed to include that *mens rea* despite his having highlighted the problems he found in the local law.  *See Kearns*, 981 F.3d at 209 (finding fear of prosecution to be speculative where the official-plaintiff "fail[ed] to plead any facts that would support a plausible inference" that he would act with the requisite *mens rea*).  Because Mohr still offers nothing more than bare

---

[7] Mohr does not allege, for example, that he will be prosecuted as a "candidate[] for public office," Docket Item 21 at ¶ 31, so this Court cannot see how prior prosecutions by the Erie County District Attorney against candidates are relevant here.

[8] By Mohr's telling, moreover, many other Board of Elections employees might be criminally liable for the conduct he challenges here.  That includes Commissioner Zellner, who Mohr alleges "is obligated by statute to . . . perform all the functions attendant to the fair administration of elections held within Erie County."  Docket Item 21 at ¶ 4.  But Zellner is not a co-plaintiff here and does not join in Mohr's claims; instead, Mohr has named him as a defendant.  *See* Docket Items 1, 21.  That only further illustrates the speculative nature of Mohr's claimed injury.

speculation to support his allegation that he might be prosecuted for implementing Local Law Number 2, he has not shown that he has standing to bring his due process claim.

In his opposition papers, Mohr also threatens to refuse to perform his obligations as an Erie County Election Commissioner if his challenges fail here. *See* Docket Item 32-7 at 8. While it is not clear whether Mohr is trying to allege standing based his potential future obstinance, courts have been less than receptive to that theory of injury. *See, e.g.*, *Kearns*, 981 F.2d at 212 (rejecting standing based on a county official's alleged "risk of removal from office if he disobeys the law" because absent a credible threat of injury, "[d]isagreement with, or disobedience to, such a law does not create a justiciable case or controversy"); *see also Penkoski*, 548 F. Supp. 3d at 30 ("At bottom, Plaintiffs' standing argument amounts to a threat: accept judicial consideration of their grievances or else they will break the law. The Court will not indulge this standing-by-coercion tactic."). In any event, Mohr has not offered any information about the statutory duties that he will refuse to perform moving forward or any resulting possible prosecution, so his threat of future behavior does not save his claim.

In sum, Mohr's claimed threat of prosecution "rest[s] on fears that are imaginary [and] speculative." *Knife Rts.*, 802 F.3d at 384 (citation and internal quotation marks omitted). Because Mohr has not established that he faces a credible threat of prosecution, he lacks standing to pursue his due process claim.

## II.   EQUAL PROTECTION CLAIM

In its prior order, this Court found that Mohr lacked standing to pursue his equal protection claim because he claimed only an abstract interest in policing the boundaries of the Erie County legislative districts rather than a direct injury to himself. Docket Item

16

20 at 6-7.  In his amended complaint, Mohr now alleges that his own vote will be unconstitutionally diluted by Local Law Number 2.  *See* Docket Item 21 at ¶¶ 17-21. Although Mohr now raises a somewhat closer question, this Court again concludes that he lacks standing to pursue his equal protection claim.

A "person's right to vote is 'individual and personal in nature.'"  *Gill*, 138 S. Ct. at 1929 (quoting *Reynolds v. Sims*, 377 U.S. 533, 561 (1964)).  So "'voters who allege facts showing disadvantage to themselves as individuals have standing to sue' to remedy that disadvantage."  *Id.* (quoting *Baker v. Carr*, 369 U.S. 186, 206 (1962)). Where a plaintiff alleges that his vote has been unconstitutionally diluted in violation of the Equal Protection Clause, he "assert[s] a plain, direct[,] and adequate interest in maintaining the effectiveness of [his] vote, not merely a claim of the right possessed by every citizen to require that the government be administered according to law."  *Baker*, 369 U.S. at 208 (alterations, citations, and internal quotation marks omitted).  On the other hand, a plaintiff who alleges that his vote counts for more than it should does not have standing to allege a vote dilution claim.  *See League of Women Voters of Nassau Cnty. v. Nassau Cnty. Bd. of Supervisors*, 737 F.2d 155, 161 (2d Cir. 1984) ("[A]s voters from overrepresented municipalities, these plaintiffs cannot claim any injury."); *Roxbury Taxpayers All. v. Delaware Cnty. Bd. of Supervisors*, 80 F.3d 42, 47 (2d Cir. 1996) ("The district court correctly ruled that since the [plaintiffs] reside in a town that is slightly overrepresented on the Board, they have shown no [] injury to themselves and hence they lack standing." (citing *League of Women Voters*, 737 F.2d at 161)); *see also Hancock Cnty. Bd. Supervisors v. Ruhr*, 487 F. App'x 189, 196 (5th Cir. 2012) ("[A]

voter who resides in an *under*populated district cannot properly allege an injury-in-fact." (emphasis in original)).

In his amended complaint, Mohr asserts that Local Law Number 2 unconstitutionally dilutes his vote.  Docket Item 21 at ¶¶ 17-21.  Where "standing [is] challenged largely on the basis of the pleadings," a court "accept[s] as true all material allegations of the complaint[] and construe[s] the complaint in favor of the complaining party."  *Silva v. Farrish*, 47 F.4th 78, 87 (2d Cir. 2022) (alterations omitted) (quoting *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 109 (1979)).  At the same time, however, the Supreme Court has stated that a plaintiff opposing a motion for summary judgment cannot "rest on [] 'mere allegations'" to establish standing, but "must 'set forth' by affidavit or other evidence 'specific facts,' which for purposes of the summary judgment motion will be taken to be true."  *Lujan*, 504 U.S. at 561 (quoting Fed. R. Civ. P. 56(e)).  So while Mohr's material allegations in his amended complaint must be accepted as true, his bare assertion that Local Law Number 2 dilutes his vote may not be enough to withstand a motion for summary judgment.

More problematic for Mohr, however, is that his opposition papers not only fail to support his claim that Local Law Number 2 unconstitutionally dilutes his vote, but they actually belie that claim.  Mohr offers little in the way of evidence as to how his vote is unconstitutionally diluted by Local Law Number 2.  But he does say that his legislative district's population "could vary by 2,789 persons *plus or minus*, depending on the subjective whim of the board of elections employee apportioning" voters between his

legislative district and the neighboring district.[9]  Docket Item 32-7 at 5 (emphasis added).

In other words, Mohr says that he might be injured by Local Law Number 2 if his legislative district includes those 2,789 people because their inclusion would impermissibly dilute his vote.  But Mohr also says that he might not be injured by Local Law Number 2—in fact, that he might benefit from it—because some or all of those 2,789 people might instead be placed in an adjacent legislative district and thereby increase the relative strength of Mohr's vote.  So rather than demonstrating how he is injured here, Mohr's response to the defendants' motions actually undermines his attempts to establish standing.

The Supreme Court has "repeatedly reiterated that threatened injury must be certainly impending to constitute injury in fact, and that allegations of possible future injury are not sufficient."  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (alterations, citation, and internal quotation marks omitted).  Mohr has not alleged any injury that is "certainly impending"; on the contrary, he has suggested that he may not be injured at all.  Because Mohr only speculates about whether Local Law Number 2 injures him or instead redounds to his benefit, he has not established standing to bring his equal protection claim.[10]

---

[9] Mohr also contends that Board of Elections employees' actions "caused a shift of 5,355 persons into legislative districts other than those assigned . . . by the Advisory Committee on Reapportionment and/or [the Erie County Legislature]."  Docket Item 32 at ¶ 18.  But Mohr does not explain how he has a personal interest in preventing that "shift" or generally ensuring that the Board of Elections follows his view of the law.  So Mohr's allegation is nothing more than a "generalized grievance against governmental conduct of which [Mohr] . . . does not approve."  *Gill*, 138 S. Ct. at 1930.

[10] Even if Mohr did have standing to assert an equal protection claim, he has not alleged anything to show how that claim could succeed on the merits.  Although the

**CONCLUSION**

Mohr challenges the actions of the Erie County government in general, and the Erie County Board of Elections in particular, for several reasons.  But he offers only speculation as to how Local Law Number 2 personally injures him by diluting his vote or how he could be subject to prosecution.  For that reason, the defendants' motions for summary judgment, Docket Item 25 and 27, are GRANTED.  The Clerk of the Court shall close the case.

SO ORDERED.

---

Equal Protection Clause protects against unconstitutional vote dilution, "minor deviations from mathematical equality among [] legislative districts are insufficient to make out a prima facie case of invidious discrimination under the Fourteenth Amendment so as to require [governmental] justification."  *Gaffney v. Cummings*, 412 U.S. 735, 745 (1973).  And the Supreme Court's "decisions have established, as a general matter, that an apportionment plan with a maximum population deviation under 10% falls within this category of minor deviations."  *Brown v. Thomson*, 462 U.S. 835, 842 (1983); *see also Evenwel v. Abbott*, 578 U.S. 54, 60 (2016) ("Where the maximum population deviation between the largest and smallest district is less than 10%, the Court has held, a state or local legislative map presumptively complies with the one-person, one-vote rule.").

Throughout this case, Mohr has not alleged that his vote has been diluted in any constitutionally significant way; instead, he generally asserts that the Equal Protection Clause "prohibits the dilution of individual voting power by means of districting plans that allocate legislative seats to districts of unequal population."  *See, e.g.*, Docket Item 32-7 at 6-7.  But the Equal Protection Clause does not necessarily demand perfect equality among legislative districts for the reasons just stated, and Mohr does not otherwise say how Local Law Number 2 violates his equal protection rights in light of the law mentioned above.

Dated:   April 24, 2023
         Buffalo, New York

*/s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE